1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

11
12
13
14
15
16

DAVID DURBIN,

          Plaintiff,

     v.

JOSEPH LEHMAN, *et al*.,

          Defendants.

Case No.  C05-5041 RBL/KLS

REPORT AND
RECOMMENDATION

**NOTED FOR:**
**September 1, 2006**

17
18
19
20
21
22

     This 42 U.S.C. § 1983 civil rights action has been referred to United States Magistrate Judge Karen L. Strombom  pursuant to Title 28 U.S.C. § 636(b)(1) and Local MJR 3 and 4.  Plaintiff has paid the filing fee in this case and is not proceeding *in forma pauperis*.   Before the court is defendant's motion for summary judgment (Dkt. # 14).  For the reasons stated below, the undersigned recommends that the motion be granted and the plaintiff's claims be dismissed with prejudice.

23

## I.  INTRODUCTION

24
25
26
27

     On March 8, 2005, plaintiff filed his complaint against Defendants Joseph Lehman, Secretary of the Department of Corrections (DOC), Victoria Roberts, Chair of the End of Sentence Review Committee and Kimberly Acker, Civil Commitment Program Manager. (Dkt.

28

REPORT AND RECOMMENDATION
Page - 1

#7).  Plaintiff claims that his constitutional rights were violated when he was unlawfully

detained past his earned early release date.  (Id. at 2).   Defendants' motion was originally filed

on January 6, 2006, but was re-noted to allow the parties additional time to file a joint status report

pending the court's consideration of the motion.  (See Dkt. # 25, 27, 29, 30).   Defendants argue

that they are entitled to summary judgment because (i) plaintiff has no legal entitlement to an early

release date; (ii) plaintiff's claims are barred by the doctrine of favorable termination; (iii)

defendants did not personally participate in the alleged acts; (iv) the Eleventh Amendment bars

claims against states in federal courts; (v) plaintiff has no liberty interest in early release; and (vi)

defendants are entitled to qualified immunity.

    Plaintiff has filed no papers in opposition to defendants' motion for summary judgment.

Plaintiff's failure may be considered by the court as an admission that the defendants' motion has

merit.  CR 7(b)(2).  The court finds summary judgment is appropriate for this reason and because

plaintiff has failed to allege a constitutional deprivation and personal participation by the named

defendants.    As the court finds these reasons dispositive, the remaining issues raised by

defendants need not be reached.  (See, e.g., Conn v. Gabbert, 526 U.S. 286, 290 (1999) (issue of

qualified immunity need not be reached when plaintiff fails to prove deprivation of a

constitutional right).

## II.  UNDISPUTED FACTS

    Plaintiff does not dispute defendants' statement of facts, which are set forth

as follows:

    Plaintiff was previously in the custody of the Washington State DOC
    pursuant to the lawful judgment and sentence of the King County Superior Court.
    On August 11, 2003, plaintiff was found guilty by a guilty plea of Attempted
    Residential Burglary and Assault.  (Dkt. # 14, Exh. 1, Declaration of Virginia

REPORT AND RECOMMENDATION
Page - 2

Shamberg, Attach. A).  Plaintiff's criminal history includes sexual assault and sexual assault in the third degree.  (Id. at p. 2).  The trial court imposed a time period of 36[6] days for the burglary and 365 days for the assault, and a term of community placement.  Plaintiff was sentenced to a community custody term "for 9 to 18 months or up to the period of earned early release awarded pursuant to RCW 9.94A.728(1) and (2) whichever is longer." (Id. at 4).  Plaintiff's earned early release date was February 27, 2004. (Dkt. # 14, Exh. 2, Declaration of Cherrie S. Kollmer, Attach. A).  Plaintiff's sentence expired on June 15, 2004. (Id.).  Plaintiff was released from DOC custody on June 14, 2004. (Id.: see also Dkt. # 14 at Exh. 3, Declaration of Stefanie J. Weigand, Attach. A, Deposition Transcript of David Durbin Page 7, Lines 12-17).

Plaintiff is currently a resident at the Special Commitment Center (SCC), a Department of Social and Health Services facility on McNeil Island.  (Dkt. # 14 at Exh. 3, Durbin Dep. Transcript 5: 19-20).  Inmates who have a community custody requirement in their judgment and sentence and are required by law or their judgment and sentence to have a release plan approved by DOC, may be released to community custody on or after their earned early release date only if their release plan is approved by DOC and the statutory notification requirements for the release of such offenders are satisfied. (Dkt. # 14, Exh. 4, Declaration of Kathryn Bail at ¶ 9).  Under DOC policy 350.200, an inmate's transition into the community on community custody status is premised on the inmate submitting a proposed release plan, including a proposed release address, which does not violate the conditions of the inmate's judgment and sentence, does not place the inmate at risk to re-offend, and does not present a risk to victim safety or community safety. (Id. at ¶ 11. See also Dkt. # 14, Exh. 4, Attach. A, DOC Policy 350.200).

The process for an inmate to secure DOC approval of a release plan in order to be released to community custody is contained in DOC Policy 350.200.  (Dkt. # 14, Exh. 4 at ¶ 10).  DOC policy 350.200 is available to all inmates. (Id.)  In determining whether an inmate's proposed plan to release to community custody is acceptable, DOC staff conduct a review of all relevant documentation, including, but not limited to, the inmate's judgment and sentence, field files, classification documents, psychological/psychiatric and forensic psychologist reports, the inmate's assigned risk management classification, and the inmate's criminal history summary. (Id.). at ¶ 12.

Proposed release plans for possible transfer to community custody status for sex offenders are investigated by a Classification Counselor or Community Corrections Officer (CCO) to determine if the plan is viable.  (Dkt. # 14 at Exh. 5, Declaration of Kimberly Acker at ¶ 7).  Minimum requirements include: an actual location of a physical address, not a contact address or post office box; the occupant/owner of the property is knowingly allowing the sex offender to reside there; the sex offender intends to physically reside in the residence; and the placement does not put the offender in violation of his/her conditions of release.

REPORT AND RECOMMENDATION
Page - 3

(Id).  The proposed sponsor shall be informed of the offender's criminal history, sex offender notification level and community notification, and conditions of release. (Id.).  The CCO will assess the degree of risk for victims and potential victims of similar age or circumstances when investigating the proposed release plans for sex offenders. (Id.; see also Exh. 4, Attach. A at 10-11; Exh. 4, Attach. B, Dutcher Decision Memo dated February 12, 2003).  A release plan will be denied if the Classification Counselor or CCO determines that the plan will place the offender in circumstances where there is a likely risk to reoffend.  (Dkt. # 14, Exh. 5 at ¶7; Exh. 4 at ¶ 14).

If a release plan is denied for an offender who appears to meet the definition of a sexually violent predator, as determined by the ESR SVP Subcommittee, the offender may submit a new or revised plan for DOC's review. (Dkt. # 14 at ¶ 15; See also Exh. 4 at ¶ 14).  If the sex offender is ultimately unable to locate a viable release address or all of the offender's proposed plans for possible transfer to community custody status are denied, he/she shall be released on the date his/her maximum sentence is reached. (Dkt. # 14, Exh. 5 at ¶ 15; Exh. 4 at ¶ 14).  Counselors continue working with inmates up to their maximum release date encouraging inmates to find the best possible place for them to go, even though once inmates have reached their maximum release date, they must be released. Id.

In February 2004, plaintiff submitted a release plan to the New Washington Apartments in Spokane. Community Corrections Officer Jonathan Hibdon was assigned to investigate the Community Release Referral (CRR) submitted by plaintiff. (Dkt. # 14, Exh. 6, Declaration of Jonathan Hibdon, ¶ 3. After reviewing plaintiff's file it was determined that he had no ties to the Spokane community, no family support in Spokane, and no work history in Spokane.  (Id. at ¶ 4).  Because of this lack of resources within the community, the plan placed plaintiff at risk to reoffend. Therefore, plaintiff's CRR to Spokane was denied and he was told he could submit another release plan.  (Id.; see also Exh. 6, Attach. A, chrono entry dated February 6, 2004).

Community Corrections Officer Jeneva Cotton met with plaintiff on February 13, 2004, and notified him that his release plan to the New Washington Apartments in Spokane had been denied because he was a Level 3 Sex Offender without ties to the community.  He was also without resources. Without any ties to the community or resources, the plan placed plaintiff at risk to re-offend. (Dkt. # 14, Exh. 7, Declaration of Geneva Cotton, ¶ 3).  Plaintiff also provided CCO Cotton with his mother's address in Laramie, Wyoming as another option for his release address. (Dkt. # 14, Exh. 7 at ¶4).  Plaintiff indicated that his mother, Vicki Doll, had been clean and sober for 5 years and would very much like him to come live with her, as his father passed away the previous year.  Ms. Cotton was unable to contact plaintiff's mother by phone and left a voice mail message asking her to return the call.  As she only had a mailing address for plaintiff's mother, Ms. Cotton could not submit the address to the Interstate Compact Unit for

investigation.  (Id.; see also Exh. 6, Attach. B).

Ms. Cotton spoke with Vicki Doll on February 18, 2004 to ask if she was willing to sponsor plaintiff in her home. (Dkt. # 14, Exh. 7 at ¶ 5). Ms. Doll indicated she would speak with other family members over the weekend and advise Ms. Cotton as to whether she would be willing to allow plaintiff to submit her address for interstate investigation.  According to Ms. Cotton, Ms. Doll was very polite and asked many questions regarding supervision and registration requirements. (Id.; see also Dkt. # 14, Exh. 6, Attach. B).  Ms. Cotton received an inmate kite from plaintiff on February 19, 2004 indicating that he spoke to his mother and they decided that it would be better for him to stay in Washington and his mother would help him get started financially.  (Id. at ¶ 6).  In his deposition testimony, plaintiff explained that he attempted to submit a release address to Wyoming, but the State of Wyoming would not accept him because he was a sex offender.  (Dkt. # 14, Exh. 3, Attach. A, Dep. Transcript 23: 1-21; 24: 1-11).  According to plaintiff, he looked into the possibility of releasing to Veteran's Administration Housing or to the Oxford House in Vancouver.  However, both of those places required an in-person interview, and would not accept him.  (Id. at Dep. Transcript 16: 3-25; 17: 1-11).  The refusal of Oxford House and the Veteran's Administration Housing to accept plaintiff was not based on any action by the DOC.  (Id. at Dep. Transcript 17: 1-11).  Plaintiff looked for release plans on his own, but was unsuccessful because his resources were limited.  (Id. at Dep. Transcript 18: 1-20).  Plaintiff testified that his housing options were limited because of his status as a Level III sex offender.  (Id. at Dep. Transcript 19: 16-19).

## III. DISCUSSION

### A.   Standard of Review

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question.  The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases.  Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party.  Id.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim.  T.W. Elec. Service Inc., 809 F.2d at 630 (relying on Anderson, *supra*).  Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed."  Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

**B.**   **Analysis**

**(1)**   **Plaintiff Has No Constitutional Right to Be Conditionally Released Nor a Liberty Interest in Earned Early Release**

Plaintiff claims that his constitutional rights were violated when he was unlawfully detained past his earned early release date.  The United States Supreme Court has held that

REPORT AND RECOMMENDATION
Page - 6

1  there is no constitutional or inherent right of a convicted person to be conditionally released

2  before the expiration of a valid sentence.  Greenholtz v. Inmates of Nebraska Penal and

3  Correctional Complex, 442 U.S. 1, 7 (1979).  A state will only be held to "create" a constitutional

4  liberty interest if its laws affirmatively create an interest that, if taken, would impose "atypical and

5  significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v.

6  Connor, 515 U.S. 472, 484 (1995).    The Sentencing Reform Act (SRA) presumes that an

7  offender committed to the DOC shall not be released before the expiration of the maximum

8  sentence.  RCW 9.94A.728.  "The statute prohibits early release absent existence of one of the

9
10 statutory exceptions." State v. Rogers, 112 Wn.2d 180, 183, 770 P.2d 180 (1989). The statute

11 does not authorize early release based on earned early release credits for offenders convicted of

12 crimes against persons, residential burglary, sex offenders, or for offenders with prior

13
14 convictions for sex offenses.  RCW 9.94A.728(1), (2).

15        Unlike other SRA offenders, offenders subject to community custody are excluded

16 from the program allowing early release based on earned early release credits.   A community

17
18 custody offender does not actually receive earned early release credits, and has no right to early

19 release based upon good conduct or performance in prison.  Id.; In re Crowder, 97 Wn. App.

20 597, 600, 985 P.2d 944 (1999).  The DOC has promulgated policies relating to community

21 custody in compliance with the authority it was granted by the Legislature.  (Dkt. # 14, Exh. 4,

22
23 Attach. A; Attach. B).  If a release plan cannot be established, offenders will remain in total or

24 partial confinement until an acceptable plan is established or the offender reaches his maximum

25 expiration date.  (Id. at Exh. 4, Attach. A at 15).

26        Plaintiff bases the allegations of his Complaint primarily on the Dutcher decision of the

27 Washington Court of Appeals.  In that decision, however, the Washington Court of Appeals

28

REPORT AND RECOMMENDATION
Page - 7

has made it clear that the DOC retains the discretion to decide whether a sex offender should

be transferred to community custody status:

> For sex offenders, early release is available only by way of a transfer to community custody status: 'a person convicted of a sex offense . . . may become eligible, in accordance with a program developed by the Department, for transfer to community custody status in lieu of earned early release time . . . .

In re Dutcher, 114 Wn. App. 755, 758, 60 P.3d 635 (2002).

While sex offenders[1] are permitted to submit a community custody plan for DOC's

investigation, the offender does not possess a legal entitlement to be released on that plan. Id.

at 757-66; RCW 9.94A.728; In re Crowder, 97 Wn. App. 597, 600, 985 P.2d 944 (1999).

Ultimate denial or approval of that plan remains within the DOC's discretion, even after the

Dutcher decision. RCW 9.94A.728.

The record reflects that DOC officials promptly investigated plaintiff's release plan and

denied it on its merits.  Plaintiff's release plan to the New Washington Apartments in Spokane

was denied after it was determined that he had no ties to the Spokane community, no family

support in Spokane, and no work history in Spokane. (Id. at ¶ 4).  Because of this lack of

resources within the community, the plan placed plaintiff at risk to reoffend. (Dkt. # 14, Exh. 6

at ¶ 4; See also Exh. 7 at ¶ 3).  Plaintiff submitted a release plan to his mother's home in

Wyoming, however, his mother decided it would be best for him to stay in Washington.  (Dkt.

# 14, Exh. 7 at ¶¶ 4-6; see also Exh. 7, Attach. B).  In addition, plaintiff testified that the State

of Wyoming would not allow him to live there because of his status as a sex offender.  (Dep.

Transcript 23: 1-21; 24: 1-11).

---

[1] While plaintiff's current convictions are for residential burglary and third degree assault (Dkt. #14, Exh. 1, Attach A), reference to plaintiff's status as a level III sex offender relates to his prior convictions for sexual assault.  (Id. at p. 5).

REPORT AND RECOMMENDATION
Page - 8

Discretion to approve or deny an offender's proposed plan for possible transfer to community custody status remains with DOC and is dependent upon the merits of that plan. The ruling in <u>Dutcher</u> to allow offenders to submit a plan for consideration does not give rise to a state created liberty interest in an early release.  Accordingly, plaintiff's claims should be dismissed.

**(2)      Plaintiff Has Failed to Allege and Failed to Show Personal Participation of Defendants**

In order to obtain relief against a defendant under 42 U.S.C. § 1983, a plaintiff must prove that the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right.   <u>Arnold v. IBM</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>Sherman v. Yakahi</u>, 549 F.2d 1287, 1290 (9th Cir. 1977).  To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation.   <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988); *see also* <u>Rizzo v. Goode</u>, 423 U.S. 362, 370-71, 375-77 (1976).  Sweeping conclusory allegations against an official are insufficient to state a claim for relief. The plaintiff must set forth specific facts showing a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff.  <u>Aldabe v. Aldabe</u>, 616 F.2d 1089, 1092 (9th Cir. 1980); <u>Rizzo</u>, 423 U.S. at 371.   A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. <u>Monell v. New York City Dept. of Social Services</u>, 436

REPORT AND RECOMMENDATION
Page - 9

U.S. 658, 694 n.58 (1978); <u>Padway v. Palches</u>, 665 F.2d 965 (9th Cir. 1982).

Plaintiff does not allege personal participation on behalf of any of the named defendants.  When deposed, plaintiff stated that he named Mr. Lehman because he was the Secretary of the DOC, and he "signs all of the paperwork."  (Dkt. # 14, Exh. 3, Attach. A, Dep. Transcript 35: 16-18).   When asked why he named Victoria Roberts in this lawsuit, plaintiff stated only that she was part of the End of Sentence Review Committee.   (<u>Id</u>. at Dep. Transcript 36: 22-25).  Plaintiff also stated that he has not had any contact with Ms. Roberts. (<u>Id</u>. at Dep. Transcript 37: 9-10).  Similarly, plaintiff stated that he had not had any contact with Kimberly Acker. (<u>Id</u>. at Dep. Transcript 36: 12-16).

Plaintiff's testimony clearly indicates that he is suing the defendants because of their positions and/or supervisory roles, and not their actions.  Plaintiff has made no allegations of direct personal participation and dismissal of his claims against defendants is appropriate for this reason alone pursuant to <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658, 694 n.58 (1978); <u>Padway v. Palches</u>, 665 F.2d 965 (9th Cir. 1982).


## IV.  <u>CONCLUSION</u>

For the reasons stated above the court should **GRANT** defendants' motion for summary judgment and dismiss plaintiff's claims with prejudice.  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the time

REPORT AND RECOMMENDATION
Page - 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on **September 1, 2006**, as noted in the caption.

DATED this <u>10th</u> day of August, 2006.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION
Page - 11